WILLIAM KELLY, Appellant, *v.* THE MAYOR, ALDERMEN AND
COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Contract for paving a street.— effect of colored spaces on a map referred to — agreement to make a contract with a railroad at the same prices — release obtained under misrepresentations.*

The contract for the paving of a city street provided that the contractor should " pave with granite block pavement, with concrete foundation, the carriageway of Third avenue from 96th street to 129th street, as specifically shown on the plans hereinafter referred to," the contract providing that it "is made with reference to the plans for the same now on file in the office of the water purveyor, which said plans are to be taken as part and parcel of these presents and are intended to co-operate."

The map referred to was colored blue where certain walks crossed the avenue or streets, pink from the curb line upon each side to a point two feet from the outer rail of the street railroad tracks, and white between the tracks and for a space of two feet upon each side thereof, but contained no memorandum as to what this coloring meant, although there appeared thereon the words "horseways not to be concreted," but no indication thereon as to what was meant by the word "horseways."

By the contract it was required that the work should be done to the satisfaction of the commissioner of public works who, after it was done, certified as follows: "I certify that the work mentioned in the contract herein specified has been completed according to the terms of said contract and is satisfactory." Subsequently, the plaintiff was paid by the city the amount due under the contract for paving the avenue, excepting therefrom two feet on each side of the outer rail of the railroad running on the avenue, although these two feet were paved under the direction of the commissioner of public works.

*Held,* that in the absence of any indication upon the map that, the contract was confined to that portion of Third avenue colored upon the map, and in view of the provision of the contract whereby the plaintiff was bound to do the work as directed by the commissioner of public works, and of the fact that the contract was for paving "the carriageway," there was no ground for excluding two feet on each side of the tracks from the carriageway to be paid for;

That the fact that there was a provision in the contract that, should a street railroad desire to make a contract with the contractor for the paving of the space within and about its tracks, he would contract with such railroad to do that work at a rate not greater than that charged in the contract, did not, in the absence of the expression of any such desire on the part of a street railroad to make such a contract with the contractor, relieve the city from its obligation to pay for the work which it ordered him to do, and which he had done under the contract, and which the city had accepted;

That a release obtained when a payment was made to the contractor, who was an illiterate man, unable to read or write, and was asked to sign a paper by one

of the city officers before the payment to which he was entitled was made to him (he at the time asking whether that paper would interfere with his claim against the city for the balance and being assured that it would not), was not a defense to an action brought by the contractor to recover for such balance so due to him under the contract.

Appeal by the plaintiff, William Kelly, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 3d day of February, 1897, upon the dismissal of his complaint upon the merits, directed by the court after a trial at a Trial Term of the Supreme Court held in and for the county of New York.

*L. Laflin Kellogg,* for the appellant.

*Chase Mellen* and *Francis M. Scott, Corporation Counsel,* for the respondent.

Ingraham, J. :

In pursuance of certain proposals and specifications issued by the defendant, the plaintiff made a bid to pave Third avenue from Ninety-sixth street to One Hundred and Twenty-ninth street in the city of New York. Such bid was accepted, and in pursuance thereof a contract was made, and the plaintiff seeks to recover in this action what is alleged to be the balance due under that contract. By the proposals the work was to be done as set forth in the specifications and form of agreement, "in substantial accordance with the specifications." The work to be done by the plaintiff was that he " shall and will furnish and provide, at his or their own proper cost and expense, all the necessary materials and the labor, and in a good, firm and substantial manner, and strictly in accordance with the following specifications, regulate and pave with granite-block pavement, with concrete foundation, the carriageway of Third avenue from 96th street to 129th street, as specifically shown on the plans hereinafter referred to." This contract also contains a provision that it " is made with reference to the plans for the same now on file in the office of the water purveyor, which said plans are to be taken as part and parcel of these presents, and are intended to co-operate." The specifications were for " regulating and paving

with granite-block pavement, with concrete foundation, the carriage-way of Third avenue, from 96th to 129th street." The 9th clause of the specifications provides for the taking up of the old pave-ment and the laying of the concrete foundation. By that clause, pro-viding for the preparation of the foundation, it is provided that " upon the foundation thus prepared shall be laid a bed of concrete to the depth of six inches, except in the space between the rails known as the horseways, where no concrete shall be laid ;" and that upon the concrete thus laid there shall be a bed of clean sharp sand, perfectly free from moisture, not less than one and one-half inches thick, to the depth necessary to bring the pavement and crosswalk to the proper grade when thoroughly rammed. By the 10th clause of the contract the laying of the pavement is provided for, and it is there provided that upon this bed of sand the stone blocks and crosswalks must be laid; and it is also provided that the courses of the blocks adjoining the pavement laid or to be laid by the railroad company must match and tooth into such pavement as shall be directed by the commissioner of public works. These seem to be the only provisions in the contract or specifications which relate exclusively to the portion of the road-way that is to be paved under the contract. By the maps with reference to which the contract was made, there is shown a carriage-way running from Ninety-sixth street to One Hundred and Twenty-ninth street. Upon it the cross streets are shown. This map is col-ored blue where certain walks cross the avenue or streets; pink, from the curb line upon each side to a point two feet from the outer rail of the street railroad track; and white, between the tracks and a space of two feet upon each side thereof. There is no memorandum at all upon these plans as to what this coloring means. There is upon the plan the words " Hôrseways not to be concreted," but there is no indication on the plan as to what is meant by the word " horse-ways." The contract then provides that: " He (the plaintiff) cove-nants and agrees that he will complete the entire work to the satis-faction of the Commissioner of Public Works, and in substantial accordance with said specifications, and that he will not ask, demand, sue for or recover for the entire work, any extra compen-sation beyond the amount payable for the several classes of work in this contract enumerated, which shall be actually performed, at the

prices therefor, herein agreed upon and fixed.  And he further agrees, that in case a railroad company operating its lines on the street or streets mentioned in this contract should desire to make a contract with him for the paving of the space within and about its tracks, he will contract with them to do the work at a rate not greater than that charged for in this contract." It does not appear that any railroad company desired to make a contract with the plaintiff. It does appear that the Third Avenue Railroad Company, operating a street railroad on Third avenue, refused to make any contract with him.  Acting under his contract, the plaintiff concreted and paved under the direction of the commissioner of public works the space on both sides of the tracks, from each track to the curbstone, not paving the space between the two tracks. When the work was ended the commissioner of public works certified as follows: " I certify that. the work mentioned in the contract herein specified has been completed according to the terms of said contract, and is satisfactory." Subsequently the plaintiff was paid by the city the amount due under the contract for paving the avenue, excepting therefrom two feet on each side of the outer rail of the railroad running on the avenue. It is conceded that these two feet were paved under the direction of the commissioner of public works; that the work was actually done by the plaintiff, and that for the work the plaintiff has received no compensation.

There is a question about a certificate of the water purveyor under the contract.  Such a certificate was given, but the four feet of paving for which the plaintiff had not been paid was omitted from that certificate.  As the counsel for the defendant does not claim to sustain the judgment upon the ground that this certificate was binding upon the parties and that the plaintiff could not recover for anything except what was included within the certificate, it is not necessary to discuss its effect. There is, however, no provision that a certificate of the water purveyor or other officer as to the amount of work done should be a condition precedent to the right of the plaintiff to be paid for the work done under the contract. There seem to be two defenses relied upon by the learned counsel for the corporation. One is that these two feet of roadway upon each side of the track of the street railway was not included within the contract because it was not col-

ored pink upon the map. It seems hardly necessary to seriously discuss this question in view of the terms of the contract itself; the absence of any indication upon the map that the contract was confined to the portion of Third avenue colored upon the map, and the provision whereby the plaintiff was bound to do the work as directed by the commissioner of public works. The contract was for paving the carriageway. There may be some question whether that would include the portion of the avenue between the railroad tracks, but it certainly would include the roadway up to and upon each side of the tracks. There is no more ground for excluding two feet on each side of the track than there is for excluding ten or twenty or any other number of feet; and when this plaintiff was directed by the commissioner of public works to pave this carriageway up to the track, as work to be done under this contract, he was only doing what his contract obliged him to do and for which he was plainly entitled to be paid. Considering the terms of this contract, the control over the work to be done reserved to the commissioner of public works, the agent of the city, and the doing of the work in good faith by the contractor under the direction of the commissioner of public works, to sustain this direction below would be a great injustice to this contractor who has done his work under the contract, which has been certified by the city, and who is entitled to be paid for it.

The provision as to a street railroad which should desire to make a contract with the plaintiff for the paving of the space within and about its tracks, that he would contract with them to do that work, would not, in the absence of any such desire on behalf of a street railroad to make a contract with this plaintiff, relieve the city from paying for the work which it ordered him to do, and which he did under that contract, and which the city has accepted as a completion of the contract. It seems to me clear that under this contract the plaintiff was bound to pave the carriageway up to the railroad tracks; that it was within the express terms of the contract as stating the work which was to be done by the plaintiff, and that he was clearly entitled to be paid for such work.

The second defense relied on by the defendant is the execution by the plaintiff of a general release upon his receiving the last payment from the city. It is sufficient for us to say that upon the

evidence a question of fact was presented as to whether or not that release was obtained by the defendant by false or misleading statements made by the agent of the city who procured the plaintiff to sign it. The plaintiff, an illiterate man, unable to read or write, was asked to sign a paper by one of the city officers before a payment, to which he was entitled, was made to him. He asked whether or not that paper would interfere with his claim against the city for the balance, and was assured that it would not; and upon that assurance he signed the paper, it not having been read to him, and he having no knowledge of its contents. It is quite clear that any release obtained under such circumstances would be void as a surrender of a claim which the party executing it was assured by the officer who procured him to sign the paper would not be released.

We think, therefore, the dismissal was error, and that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Van Brunt, P. J., Williams, Patterson and Parker, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.